UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SETTLE-MUTER ELECTRIC, LTD,

    Plaintiff,

  v.                                  Case No.: 2:15-cv-2470
                                      JUDGE SMITH
                                      Magistrate Judge Kemp

SIEMENS INDUSTRY, INC.,

    Defendant.

**OPINION AND ORDER**

This matter is before the Court upon Plaintiff Settle-Muter Electric, Ltd.'s ("SME") Motion for Reconsideration (the "Motion") (Doc. 25) of this Court's Opinion and Order granting Defendant's Motion to Dismiss. The Motion is fully briefed and ripe for review. For the following reasons, the Court **DENIES** Plaintiff's Motion.

## I.    BACKGROUND

On December 9, 2015, the Court granted Defendant Siemens Industry, Inc.'s ("Siemens") Motion to Dismiss SME's claims for consequential damages it alleged it suffered in connection with a contractual dispute between the parties (hereinafter, the "Opinion and Order"). SME now moves under Federal Rule of Civil Procedure 54(b) to have the Court reconsider the Opinion and Order. In the alternative, SME moves under Federal Rule of Civil Procedure 54(b) and/or 28 United States Code § 1292 to have the Court certify its December 9th decision for immediate appeal.

A full recitation of the factual background is not necessary here. In short, SME served as Siemens' subcontractor on a construction project. SME and Siemens' contractual relationship is founded on several contracts. The parties originally entered into a Master Subcontract Agreement (the "Master Agreement") on February 1, 2011. The Master Agreement controlled the general rights and obligations of the parties and dictated that SME would perform work pursuant to subsequent, project-by-project work orders. All subsequent work orders incorporated the terms of the Master Agreement. The parties finalized one such work order on December 11, 2007 (the "Work Order"). As work progressed under the Work Order, SME found it necessary to devote additional, unexpected staffing to compensate for perceived shortcomings in Siemens' fulfillment of its duties under the Master Agreement and Work Order. SME contended that these staffing changes created a hole in its core business and caused it to suffer lost profits. SME's initiated this lawsuit to recover those lost profits and other losses associated with Siemens' alleged breach.

On December 9, 2015, the Court granted Siemens' Motion to Dismiss SME's consequential damages claims. The Opinion and Order's reasoning was based on the presence of an express consequential damages waiver in the Master Agreement. That provision reads as follows:

> *Article 11: INDEMNITY*
> **11.1** For separate consideration of ten dollars ($10.00) the receipt and sufficiency of which is hereby acknowledged, the Subcontractor [SME] shall indemnify, defend, and hold Contractor [Siemens] and Customer and each of their respective employees, agents or subcontractors harmless from any and all losses, damages, settlements, costs, charges, expenses or liabilities of every kind or character, including reasonable attorneys' and witness' fees and any other costs of defense and settlement, arising out of or relating to any and all claims, liabilities, losses, fines, penalties, liens, demands, obligations, actions, proceedings, or causes of action, of every kind arising, including but not limited to death or injury to any person, destruction or damage to any property, or contamination or adverse effect upon natural resources or the environment, to the extent arising, in whole or

2

> in part, out of any: (1) failure of Subcontractor [SME], its employees agents or subcontractors to comply with any law, ordinance, regulation, rule or order of any governmental or regulatory body including those dealings with health, safety or the environment; (2) improper, substandard, or inadequate performance or non-performance of this Subcontract, including any submission of deficient cost or pricing data; or (3) any negligent or wrongful act or omission of the Subcontractor [SME], its employees, agents, suppliers or subcontractors.  **In no event shall Contractor [Siemens] or Customer be liable to Subcontractor [SME] for indirect or consequential damages or loss of income or profit irrespective of the cause, fault, or reason of same.**

(emphasis added).  In its Motion for Reconsideration, Plaintiff argues that the Court committed clear error in holding that a general consequential damages waiver can be operative where it is situated within an indemnity provision and no indemnity claims are pending.

## II. DISCUSSION

### A. SME's Motion for Reconsideration

#### 1. Standard of Review

Plaintiff moves pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.  Rule 54(b) states in relevant part:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).  "District courts have authority both under common law and [Federal Rule of Civil Procedure] 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment."  *Harrington v. Ohio Wesleyan Univ.*, No. 2:05-CV-249, 2008 WL 163614, at *1 (S.D. Ohio Jan. 16, 2008) (Holschuh, J.) (quoting *Rodriguez v. Tenn. Laborers Health & Welfare Fund,* 89 F. App'x 949, 959 (6th Cir. 2004) (unpublished)).  "The Court has 'significant discretion' in considering a motion to reconsider an interlocutory order."  *Harrington,* 2008 WL 163614, at *2 (quoting *Rodriguez,* 89 F. App'x at 959, n. 7.)  "Motions for

3

Reconsideration serve a limited function, and are generally only warranted where there is: (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." "Generally, a motion for reconsideration is only warranted when there is: (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest justice." *Doyle v. Pollitt*, No. 2:08-CV-761, 2010 WL 658652, at *1 (S.D. Ohio Feb. 22, 2010) (Marbley, J.) (citing *Rodriguez*, 89 F. App'x at 959).

Thus, motions for reconsideration are "not designed to give an unhappy litigant an opportunity to relitigate matters already decided." *Gascho v. Glob. Fitness Holdings, LLC*, 918 F. Supp. 2d 708, 714 (S.D. Ohio 2013) (Smith, J.). "When a motion for reconsideration raises only a disagreement by a party with a decision of the court, that dispute 'should be dealt with in the normal appellate process, not on a motion for reargument.'" *Dukes v. ADS All. Data Sys., Inc.*, No. 2:03-CV-00784, 2007 WL 1057387, at *1 (S.D. Ohio Apr. 4, 2007) (Smith, J.) (quoting *Database Am. v. Bellsouth Adver. & Publ'g*, 825 F. Supp. 1216, 1219–20 (D.N.J. 1993)).

**2. Analysis**

SME believes the Court reached a clearly erroneous decision by barring it from recovering consequential damages from Siemens. One of the Court's stated grounds for barring such recovery was the express waiver at the end of the Indemnity Provision. (Doc. 24, Order at 15) ("In no event shall Contractor [Siemens] or Customer be liable to Subcontractor [SME] for indirect or consequential damages or loss of income or profit irrespective of the cause, fault, or reason of same.")

SME largely bases its argument on two premises: (1) the Court misinterpreted its position—that consequential damage waivers in indemnification provisions are inoperable in the

4

absence of an indemnification claim—for the alternative position that indemnification provisions are only operable in the presence of a third-party claim; and (2) the Court misapplied or misinterpreted case law relied upon by SME in its original briefing.  SME's Motion rehashes many of the same arguments and cases already considered in the Opinion and Order.  Further, the Motion failed to even mention the case primarily relied upon by the Court in reaching its original decision—*Battelle Mem'l Inst. v. Nowsco Pipeline Servs., Inc.*, 56 F. Supp. 2d 944 (S.D. Ohio 1999) (Marbley, J.).

Siemens counters that SME is simply rehashing old arguments and cannot point to any decision—controlling or otherwise—where a court "look[ed] at an indemnity clause or damage waiver in isolation and, absent any other more specific contract provision, refuse[d] to apply it." (Doc. 26, Resp. at 10–11).  Central to Siemens' argument is an express provision (Article 19.1) contained in the Master Agreement that states the headings in the Maser Agreement "are for quick reference only and are not to be construed as part of [the Master Agreement]."  (Doc. 26, Resp. at 2, 4).  Thus, Siemens argues that the express consequential damages waiver at the end of the Indemnity Provision is operable even in the absence of an indemnification claim.

As SME has pointed out, "[t]his Court arguably based its finding that [SME] waived consequential damages on two things: 1) the consequential damages waiver within the indemnification provision, and/or 2) the indemnification provision itself." (Doc. 28, Reply at 2). SME has spent considerable time and effort urging the Court to reconsider its holding with regards to the waiver in indemnification provision itself because "Siemens is not seeking, and has no right to seek, indemnification under these facts." (*Id.* at 3).  SME has spent considerably less of its analysis on the express consequential damages waiver contained at the end of the Indemnity Provision.  Specifically, Siemens argues that there is no indemnification claim in the

5

present case and, *ipso facto*, the consequential damages waiver located at the end of the Indemnity Provision cannot apply. In the Court's view, this is a flawed argument. The consequential damages waiver stands apart from the rest of the Indemnity Provision (it is a separate sentence) and unambiguously waives any right SME may have to "indirect or consequential damages or loss of income or profit irrespective of the cause, fault or reason for same." (Doc 10-1, Resp. to Mot. to Dismiss, Ex. 1 at 21). This waiver is not unenforceable simply because it is located under the "Indemnity" heading. As Siemens has pointed out—and SME has seemingly ignored—Article 19.1 of the agreed-upon Master Agreement dictates that the heading is for reference only. To hold the consequential damages waiver unenforceable would lend greater weight to the Master Agreement headings than the parties intended when they entered the contract. Because the Court cited the consequential damages waiver as an independent basis for its decision, and seeing no reason to overturn its ruling, this analysis need not extend to the SME's other contentions regarding a potential waiver in the indemnification provision itself.

For the foregoing reasons, the Court **DENIES** SME's Motion for Reconsideration. The Court now turns to the issue of whether it is appropriate to certify the December 9th Opinion and Order for immediate appeal.

### B. SME's Motion for Immediate Appeal

In the event its Motion for Reconsideration was denied, SME has also moved this Court under Federal Rule of Civil Procedure 54(b) and/or 28 U.S.C. § 1292, both of which permit district courts to certify an interlocutory order for immediate appeal under certain circumstances.

#### 1. Standard of Review

"Rule 54(b) of the Federal Rules of Civil Procedure permits immediate review of certain district court orders prior to the ultimate disposition of a case." *Gen. Acquisition, Inc. v.*

*GenCorp, Inc.*, 23 F.3d 1022, 1026 (6th Cir. 1994). "Rule 54(b) certification requires two independent findings. First, the district court must expressly 'direct the entry of final judgment as to one or more but fewer than all the claims or parties' in a case. Second, the district court must 'express[ly] determin[e] that there is no just reason' to delay appellate review. *Id.* (citing Fed. R. Civ. P. 54(b)). The Court's use of Rule 54(b) "should be reserved for the infrequent harsh case, . . . where certification serves the interests of justice and judicial administration." *Schneider v. Hardesty*, No. 1:06-CV-836, 2010 WL 150139, at *2 (S.D. Ohio Jan. 14, 2010) (Dlott, J.) (quoting *Knafel v. Pepsi Cola Bottlers of Akron, Inc.*, 850 F.2d 1155, 1159 (6th Cir. 1988)). Rule 54(b) is "designed to facilitate the entry of judgment on one or more claims, or as to one or more parties, in a multi-claim/multi-party action." *Baden-Winterwood v. Life Time Fitness*, No. 2:06-CV-99, 2007 WL 2326877, at *4 (S.D. Ohio Aug. 10, 2007) (Frost, J.) (quoting *Solomon v. Aetna Life Ins. Co.*, 782 F.2d 58, 60 (6th Cir. 1986)).

Alternatively, under Section 1292(b), a district court may properly certify an order for interlocutory appeal if (1) the order involves a controlling question of law, (2) a substantial ground for difference of opinion exists regarding the correctness of the decision, and (3) an immediate appeal may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). "[A]ll three requirements must be satisfied before the court may consider certifying a decision for interlocutory appeal." *Stockwell v. Hamilton*, No. 15-11609, 2016 WL 3438109, at *1 (E.D. Mich. June 23, 2016) (citing *Couch v. Telescope, Inc.*, 611 F.3d 629, 633 (9th Cir. 2010); *see also Arenholz v. Bd. of Trustees of Univ. of Illinois*, 219 F.3d 674, 675-76 (7th Cir. 2000)). Interlocutory appeals are generally disfavored in the federal system. *See, e.g.*, *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368 (1981). "Routine resort to § 1292(b) requests would hardly comport with Congress' design to reserve interlocutory review for exceptional cases while

7

generally retaining for the federal courts a firm final judgment rule." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 74 (1996). "[A] party seeking an interlocutory appeal has the burden of showing exceptional circumstances exist warranting an interlocutory appeal." *JP Morgan Chase Bank, N.A. v. First Am. Title Ins. Co.*, 725 F. Supp. 2d 619, 624 (E.D. Mich. 2010) (citing *W. Tenn. Chapter of Assoc. Builders & Contractors, Inc. v. City of Memphis (In re City of Memphis)*, 293 F.3d 345, 350 (6th Cir. 2002); *Vitols v. Citizens Banking Co.*, 984 F.2d 168, 170 (6th Cir. 1993)).

**2.     Analysis**

As noted above, SME has moved the Court to certify its December 9, 2015 decision for immediate appeal on two grounds: Federal Rule of Civil Procedure 54(b) and/or 28 U.S.C. § 1292. SME's motion under Rule 54(b) is predicated on the possibility that the Court barred recovery of consequential damages on the indemnity clause itself. As stated above in Section II.A.2, the Court's denial of SME's right to recover consequential damages is based on the consequential damages waiver alone, not the indemnification article itself. Accordingly, the Opinion and Order did not bar SME's breach of contract claims and did not "direct entry of a final judgment as to one or more, but fewer than all, claims or parties." Fed. R. Civ. P. 54(b). As Siemens has pointed out, the Court's decision barred SME's recovery of consequential damages, but did not dispose of any of SME's claims. (Doc. 26, Resp. at 12). Indeed, the Sixth Circuit has stated "[a] district court's rejection of one of several requests for relief arising from a single wrong does not establish appellate jurisdiction under Rule 54(b). *Gen. Acquisition*, 23 F.3d at 1028. Therefore, the Court finds Rule 54(b) to be an improper vehicle for certifying immediate appeal under the present circumstances.

Before proceeding with its analysis of 28 U.S.C. § 1292, the Court feels it is necessary to provide some context regarding SME's alleged damages. SME alleges total damages in excess

8

of $4.7 million.  (Doc. 3, Compl. at ¶ 98).  The Court is unaware of the exact amount that SME's alleged consequential damages amount to.  SME has, at various points, described the consequential damage amount to be "millions of dollars" (*Id*. at ¶ 64) and "a significant portion of the damages it seeks in this case."  (Doc. 28, Rep. at 18).  Without objection or correction from SME, Siemens identified the non-compensatory damages to be "over $2 million."  (Doc. 26, Resp. at 14).

SME argues that the following is a controlling question of law: "Is a consequential damages waiver ambiguous when it is placed in a sentence preceded by an indemnification provision in a contract?"  (Doc. 28, Rep. at 17).   "A legal issue is controlling if it could materially affect the outcome of the case."  *Neff v. U.S. Xpress, Inc.*, No. 2:10-CV-948, 2013 WL 5947177, at *2 (S.D. Ohio Nov. 6, 2013) (Smith, J.) (citing *In re City of Memphis*, 293 F.3d at 350).  As for the second certification factor, SME argues that neither it nor Siemen's has cited any Sixth Circuit authority that has directly addressed the exact question at issue in this case.  The Sixth Circuit has stated that a substantial ground for difference of opinion exists only when:

> (1) the question is difficult, novel and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions; (2) the question is difficult and of first impression; (3) a difference of opinion exists within the controlling circuit; or (4) the circuits are split on the question.

*In re Miedzianowski*, 735 F.3d 383, 384 (6th Cir. 2013).  With regard to the third and final factor, SME contends that an immediate appeal may materially advance the ultimate termination of the litigation because "consequential damages constitute a significant portion of the damages it seeks."  (Doc. 28, Rep. at 18).  Further, SME contends that the parties' positions in the litigation will be affected by the indemnity clause's scope of applicability.  (*Id*.).

The Court finds that SME has failed to meet its burden to show that immediate appeal of the Opinion and Order is appropriate under these circumstances for several reasons.  First, the

9

Court has serious doubts that any controlling questions of law persist.  Resolving the issue of whether consequential damages are available to SME does not materially affect the outcome of the litigation where liability has not yet been determined and over $2 million dollars are still at stake.  Second, SME has failed to show that any controlling authority exists to suggest that an express consequential damages waiver should be ignored simply because it is situated in close proximity to indemnity language within the contract.  Finally, even assuming *arguendo* that SME was able to satisfy the first two certification factors, the Court cannot agree that immediate resolution of the issue would materially advance the ultimate termination of this litigation.  The Court has not yet determined the merits of SME's and this order clarifies that the indemnification provision itself does not bar SME's breach of contract claims.  It is mere conjecture to assume that Siemens' position in this case would be materially altered by the prospect of facing a $4.7 million judgment as opposed to $2–2.7 million judgment.  Speculation alone is an insufficient basis to satisfy this statutory requirement.  *See, e.g.*, *Zino v. Whirlpool Corp.*, No. 5:11CV01676, 2015 WL 9583030, at *4 (N.D. Ohio Dec. 31, 2015); *Sigma Fin. Corp. v. Am. Intern. Speciality Lines Ins. Co.*, 200 F. Supp. 2d 710, 724 (E.D. Mich. 2002).

### III.    CONCLUSION

Based on the foregoing, SME's Motion for Reconsideration is **DENIED**.  SME's alternative Motion to Certify the Opinion and Order for Immediate Appeal is also **DENIED**.

The Clerk shall remove Document 25 from the Court's pending motions list.

**IT IS SO ORDERED.**

                                         */s/ George C. Smith*
                                         **GEORGE C. SMITH, JUDGE**
                                         **UNITED STATES DISTRICT COURT**